IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| MARYAM NAWROZ | ) ) ) | |
| Appellant, | ) ) | Civil No. 1:12-cv-216 (GBL) |
| v. | ) ) | |
| WELLS FARGO ADVISORS, LLC | ) ) | |
| Appellee. | ) ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on *pro se* Appellant Maryam Nawroz's appeal from the decision of the United States Bankruptcy Court of the Eastern District of Virginia that Appellee Wells Fargo Advisors, LLC's ("Wells Fargo") claim is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(4). This case arises from Ms. Nawroz's use of funds mistakenly deposited into her individual retirement account ("IRA") by Wachovia Securities, LLC ("Wachovia").

After a California state court entered a default judgment against Ms. Nawroz for the amount of $36,962.71 in a civil action brought by Wachovia, Ms. Nawroz obtained a discharge of the debt in a Chapter 7 bankruptcy proceeding. Wells Fargo Advisors, LLC ("Wells Fargo"), as the successor to Wachovia, initiated an adversary proceeding in the Bankruptcy Court to have the debt declared non-dischargeable. After a one-day, non-jury trial on the merits of Wells Fargo's complaint, United States Bankruptcy Judge Brian F. Kenney held that Ms. Nawroz's debt to Wells Fargo was non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) and entered judgment in favor of Wells Fargo. *See Wells Fargo Advisors, LLC v. Nawroz (In re Nawroz),*

1

Bankr. No. 10-20633-BFK, 2011 WL 6749064 (Bankr. E.D. Va. Dec. 22, 2011). Ms. Nawroz now appeals the decision of the Bankruptcy Court.

The issue before this Court is whether the Bankruptcy Court erred in its determination that Ms. Nawroz's debt to Wells Fargo is non-dischargeable under 11 U.S.C. § 523(a)(6) based on its finding that Ms. Nawroz was aware of her balance with Wachovia at the time of the mistaken credit despite Ms. Nawroz's testimony that she was unaware of the credit. The Court affirms the Bankruptcy Court's ruling that Ms. Nawroz's debt to Wells Fargo is not dischargeable because the findings that Ms. Nawroz was aware of her bank account's proper balance and therefore knowingly used funds that did not belong to her were not clearly erroneous. These findings support the Bankruptcy Court's conclusion that Ms. Nawroz's use of the funds mistakenly deposited into her Wachovia account constituted willful and malicious injury to Wachovia, the true owner of these funds, under the § 523(a)(6) bankruptcy discharge exception.

## I. BACKGROUND

In April 2008, Ms. Nawroz held a Certificate of Deposit ("CD") account (Acct. No. ***********1867) at Wachovia. Ms. Nawroz stated in response to a request for admissions in connection with the adversary proceeding that she knew that her CD account had a balance of no more than $28,032.12 in April 2008. Appellee Ex. 11 at 3. On April 9, 2008, Wachovia mistakenly transferred $28,029.99 into Ms. Nawroz's IRA (Acct. No. ***********1836), which previously had a zero balance. Appellee Ex. 4 at 3. On April 11, 2008, Wachovia credited Ms. Nawroz's IRA with the balance of the CD account, $28,032.12, bringing the value of the IRA to $56,062.11. *Id.* Ms. Nawroz stated in response to a request for admissions that she was not

aware of the balance of her IRA and represented further that she was not even aware that she had an IRA with Wachovia. Appellee Ex. 11 at 3.

On April 18, 2008, Wachovia transferred $56,043.24, the full value of her IRA[1] to Ms. Nawroz's checking account at Union Bank of California ("Union Bank") and closed Ms. Nawroz's accounts with Wachovia upon her request. *Id.* At trial, Ms. Nawroz testified that, during April 2008, she was severely depressed, her home was in foreclosure, she lost her business, and she was not attending to her business affairs. She also testified that she did not know that funds not belonging to her had been mistakenly transferred to her account at Union Bank.

On or about May 1, 2008, Ms. Nawroz wrote a check in the amount of $81,000.00 to Khalil Wadedi, allegedly to avert a family emergency.[2] At the time, the checking account with Union Bank held less than $84,000, so the check would not have cleared but for the mistaken $28,029.99 credit from Wachovia.

Wachovia Securities subsequently brought a civil action against Ms. Nawroz in the Superior Court of California, Orange County. On October 5, 2010, the Superior Court entered a default judgment against Ms. Nawroz in the amount of $36,962.71, consisting of $28,029.99 in principal, $1,790.90 in attorney's fees, $6,712.32 in prejudgment interest, and $429.50 in costs.

On December 22, 2010, Ms. Nawroz filed a voluntary bankruptcy petition in the United States Bankruptcy Court of the Eastern District of Virginia and obtained a discharge of the debt to Wells Fargo, successor in interest to Wachovia. *Id.* Wells Fargo filed an adversary proceeding against Ms. Nawroz claiming that the debt is non-dischargeable. *Id.*

---

[1] The value of the IRA on April 18, 2008 was determined by adding an interest credit of $6.13 to the sum of the previous two deposits, and then subtracting a $25.00 transfer fee. Appellee's Ex. 4 at 3.

[2] Ms. Nawroz testified that she issued the $81,000.00 check to save her brother-in-law, who had been kidnapped in Afghanistan.

On December 13, 2011, a one day, non-jury trial was held in this matter. Ms. Nawroz was the only witness who testified at the trial. After hearing all of the evidence, the Bankruptcy Court took the matter under advisement. On December 22, 2011, the Bankruptcy Court entered its Memorandum Opinion holding Ms. Nawroz's debt to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). *In re Nawroz*, 2011 WL 6749064, at *3. Ms. Nawroz, *pro se*, appeals the decision of the Bankruptcy Court.

## II. STANDARD OF REVIEW

Federal district courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a)(1) (2012). A district court reviews the bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law de novo. *See Devan v. Phoenix Am. Life Ins. Co. (In re Merry-Go-Round Enters., Inc.)*, 400 F.3d 219, 224 (4th Cir. 2005). "If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Heilig-Meyers Co. v. Wachovia Bank, N.A. (In re Heilig-Meyers Co.)*, 328 B.R. 471, 474-75 (E.D. Va. 2005) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985)) (internal brackets omitted).

## III. ANALYSIS

The Court affirms the Bankruptcy Court's ruling that Ms. Nawroz's debt to Wells Fargo is not dischargeable because its finding that the debt arose from Ms. Nawroz's knowing use of funds that did not belong to her was not clearly erroneous. This finding supports the conclusion that the debt falls within the willful and malicious injury exception to discharge in bankruptcy under 11 U.S.C. § 523(a)(6).

4

Discharge of a debt for "a willful and malicious injury by the debtor to another entity or to the property of entity" is barred by Section 523(a) of Bankruptcy Code. 11 U.S.C. § 523(a)(6). "[A]s it pertains to Section 523(a) of the Bankruptcy Code, [the term 'willful' is ascribed] a meaning similar to that derived from its use in other areas of the law," *i.e.*, "deliberate or intentional." *First Nat'l Bank of Md. v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995); *see also St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1009 (4th Cir. 1985). However, "malice" does not mean the same thing in Section 523(a) as it does in other legal contexts. *In re Stanley*, 66 F.3d at 667. "A debtor may act with malice even though he bears no subjective ill will toward, and does not specifically intend to injure, his creditor." *St. Paul Fire*, 779 F.2d at 1008-09.

A debtor's harmful act done "deliberately and intentionally in knowing disregard of the rights of another," such as a creditor, is an act that is sufficiently willful and malicious to preclude discharge of the debt under § 523(a)(6). *Id.* at 1010. The term "willful and malicious injury" from § 523(a)(6) does not include mere negligent or reckless conduct, but rather it is limited to intentional torts. *See Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998) (holding that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)"). "[A]n act that 'necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the [bankruptcy discharge] exception[.]'" *Id.* at 63 (quoting *Tinker v. Colwell*, 193 U.S. 473, 487 (1904)). "[A] particular debtor's knowledge may be shown by circumstantial evidence: 'Implied malice . . . may be shown by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" *In re Stanley*, 66 F.3d at 668 (quoting *St. Paul Fire*, 779 F.2d at 1010).

In *In re Stanley*, the issue was whether a Chapter 7 debtor's use of a line of credit that had been increased ten-fold without explanation constituted willful and malicious injury such that it fell within the § 523(a)(6) bankruptcy discharge exception. 66 F.3d at 668. The debtor, Carroll Stanley, had applied for a $10,000 line of credit with First National Bank of Maryland ("FNB"), and his application was approved, but only for $8,000. *Id.* at 665. Months later, Stanley received a statement indicating that the credit line had been inexplicably increased to $80,000. *Id.* at 666. Stanley then called an FNB branch to confirm the accuracy of the statement and was told by a branch manager that the $80,000 credit line was correct. *Id.* at 666 n.1. Stanley later used $72,000 of the credit line to fund a down payment on a three-acre property and transaction costs. *Id.* at 666.

The Fourth Circuit held that Stanley willfully and maliciously injured FNB by exercising dominion over funds belonging to FNB, which Stanley knew did not belong to him. *Id.* at 666-68. Stanley's call to the FNB branch confirms that Stanley "knew something was amiss when his credit limit was suddenly increased by a factor of ten." *Id.* at 668. Stanley also knew that "he had been approved for $2,000 less than the relatively modest secured line of credit that he had requested." *Id.* These facts about Stanley's knowledge were sufficient to support the conclusion that he deliberately converted FNB's funds and thereby willfully and maliciously injured the creditor. *Id.* The Fourth Circuit explained further that "the proper focus in this case "[was] not Stanley's 'good intentions,' but simply his exercise of dominion and control over funds that he knew belonged to another." *Id.*

Similarly, the Bankruptcy Court in the present case held that Ms. Nawroz's debt to Wells Fargo is not dischargeable because Ms. Nawroz's use of funds that she knew belonged to another constituted willful and malicious injury to their owner, Wells Fargo. *In re Nawroz*, 2011 WL

6749064, at *3. The Bankruptcy Court primarily relied on two findings to support its conclusion. First, Ms. Nawroz knew that her CD Account with Wachovia held no more than $28,032.21 in April of 2008, and therefore the amount transferred from Wachovia to the Union Bank checking account should not have exceeded this amount. *Id.* at *2. Second, Ms. Nawroz subsequently used $81,000.00 from her Union Bank checking account after the transfer of funds from Wachovia. *Id.* at *1. But for the mistaken credit of $28,029.99 by Wachovia, the Union Bank checking account would have held no more than approximately $56,000 and therefore Ms. Nawroz's $81,000 check would not have cleared. These findings of fact are not clearly erroneous, and they support the Bankruptcy Court's ruling that Ms. Nawroz's debt to Wells Fargo is non-dischargeable under 11 U.S.C. § 523(a)(6) for Ms. Nawroz's "willful and malicious" injury to Wells Fargo. Ms. Nawroz knew that she was not the true owner of approximately $28,000 in her Union Bank checking account in May 2008 but used these funds "in knowing disregard of the rights" of their true owner. *St. Paul Fire*, 779 F.2d at 1010. Though the Court does not find any bad faith in her actions, Ms. Nawroz's injury to the true owner of the funds was intentional because such injury is the natural consequence of using funds that belong to another. *See Geiger*, 523 U.S. at 63.

Ms. Nawroz's claim that she was unaware of the IRA from which Wachovia transferred funds to Union Bank is immaterial. The IRA had a zero balance until Wachovia's mistaken credit of $28,029.99 on April 9, 2008, and subsequent transfer of the full $28,032.12 balance of the CD account on April 11, 2008. Ms. Nawroz admitted that she knew the balance of the CD account. Therefore, she must have known that the amount transferred from Wachovia to Union Bank should not have exceeded $28,032.21, regardless of what account held the funds prior to

7

this transfer, and that she was not the true owner of approximately $28,000 of the amount in her Union Bank account in May 2008.

Ms. Nawroz's testimony that she did not see the bank check from Wachovia to Union Bank and was not aware of the mistaken credit prior to the transfer is also immaterial. *See In re Nawroz*, 2011 WL 6749064, at *1. If she knew the amount transferred from Wachovia to Union Bank should not have exceeded approximately $28,032.21, then she knew that the $81,000 she subsequently used would include funds that did not belong to her. Also, this Court cannot second-guess the Bankruptcy Judge's determination about the credibility of any contrary testimony by Ms. Nawroz in light her admission to knowledge of the proper value of her Wachovia account and subsequent deliberate use of a substantially larger amount. *See In re Heilig-Meyers Co.*, 328 B.R. at 474-75 (reviewing court may not reverse bankruptcy court's plausible account of the evidence).

As in *In re Stanley*, the Bankruptcy Court's findings as to Ms. Nawroz's knowledge are sufficient to support the conclusion that she deliberately exercised control over funds she knew belonged to another. *See In re Stanley*, 66 F.3d at 668. Therefore, this Court affirms the Bankruptcy Court's conclusion that Ms. Nawroz willfully and maliciously injured Wells Fargo, the true owner of the funds, and that her debt to Wells Fargo is therefore non-dischargeable under § 523(a)(6). *See Geiger*, 523 U.S. at 63 (intentional act that necessarily causes injury is willful and malicious under § 523(a)(6)).

## IV. CONCLUSION

The Court affirms the judgment of the United States Bankruptcy Court of the Eastern District of Virginia that the Appellant's debt to the Appellee is non-dischargeable under 11

U.S.C. § 523(a)(6) because the Appellant willfully and maliciously injured the Appellee by intentionally using funds that were the property of the Appellee. An appropriate order will issue.

Alexandria, Virginia
8/14/12

/s/
Gerald Bruce Lee
United States District Judge